■ In the Matter of TOWN OF HEMPSTEAD, Petitioner, v COMMISSIONER OF STATE OF NEW YORK OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES et al., Respondents. (Proceeding No. 1.) In the Matter of TOWN OF HEMPSTEAD, Petitioner, v COMMISSIONER OF STATE OF NEW YORK OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES et al., Respondents. (Proceeding No. 2.)—Proceedings pursuant to CPLR article 78 to review (1) a determination of the respondent Commissioner of the State Office of Mental Retardation and Developmental Disabilities (commissioner), dated June 25, 1984, which, after a hearing, found that the establishment of a community residence facility at a contested location in East Meadow would be appropriate (proceeding No. 1) and (2) a determination of the commissioner, dated July 11, 1984, which, after a hearing, found that the establishment of a community residence facility at a contested location in Uniondale would be appropriate (proceeding No. 2).

Determinations confirmed and proceedings dismissed on the merits, with two separate bills of costs.

The commissioner determined that a need for the facilities existed due to the large waiting lists of Nassau County based clients in need of homes and specifically due to a need to relocate individuals from another facility in Hempstead which has experienced a rise in crimes. The record clearly shows that the commissioner considered "the need for [the] facilities [within] the municipality" (Mental Hygiene Law § 41.34 [c] [5]). The commissioner also concluded that the evidence presented at the hearing did not demonstrate how the proposed

community residences, in combination with any other State-licensed facilities, would substantially alter the nature and character of the communities involved (*see,* Mental Hygiene Law § 41.34 [c] [5]; *Town of Hempstead v Commissioner, State of N. Y. Off. of Mental Retardation & Developmental Disabilities,* 89 AD2d 850). The determinations were supported by substantial evidence. The commissioner was correct in excluding facilities such as nursing homes, juvenile detention centers, a correctional facility, a hospital, and a vocational training school from consideration since they are not of the same or similar type as the proposed facilities (*Matter of Town of Hempstead v Commissioner of State of N. Y. Off. of Mental Health,* 97 AD2d 826; *Matter of Village of Newark v Introne,* 84 AD2d 936; *Matter of Town of Onondaga v Introne,* 81 AD2d 750). The testimony at the hearing that there would be a substantial alteration in the character of the community either was conclusory or concerned matters not relevant to these determinations, such as a reduction of the number of buildings subject to local property taxes (*Town of Hempstead v Commissioner, State of N. Y. Off. of Mental Retardation & Developmental Disabilities, supra,* at p 851).

Finally, we note that the sponsoring agency in the East Meadow case (Association for Children with Learning Disabilities) complied with the requirement of Mental Hygiene Law § 41.34 (c) (1) to send the chief executive officer of the municipality a copy of the most recently published data compiled pursuant to Social Services Law § 463-a. Publication of a new set of data subsequent to the sponsor's sending of the data does not vitiate the compliance if the data sent was the most recent available at the time it was sent. Mollen, P. J., Gibbons, Rubin and Kooper, JJ., concur.